## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION OF
GALLUP-McKINLEY COUNTY SCHOOLS,

      Plaintiff,

v.                                        CIV 18-1039 KBM/SCY

NATIVE AMERICAN DISABILITY LAW
CENTER, INC. and MAVIS YAZZIE,
as Parent of K.Y., Student,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment (*Doc. 61*), filed April 30, 2021. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment in this matter. *Docs. 6*; *7*; *8*. Having reviewed the motion, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that the motion is well-taken in part and will be granted in part and denied in part.

## I.    INTRODUCTION

Gallup-McKinley Consolidated School District ("GMCS") initiated this federal case in an attempt to recover the fees and costs it incurred in administrative proceedings initiated by Native American Disability Law Center ("NADLC") and Mavis Yazzie ("Ms. Yazzie") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482.

The IDEA provides a comprehensive scheme to ensure that students with disabilities are provided a free appropriate public education ("FAPE") to meet their unique needs and to prepare them for employment and independent living. 20 U.S.C. § 1400(d)(1)(A). The IDEA requires any state that accepts federal education funds to provide disabled students with a FAPE in the least restrictive environment. *Ellenberg v. N.M. Mil. Inst.*, 479 F.3d 1262, 1267 (10th Cir. 2007). In meeting this requirement, the Act instructs states to create an Individualized Education Plan ("IEP") for each disabled student within its care. *Id*. Decisions concerning a child's placement must be based on their IEP and made by "a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options." 34 C.F.R. § 300.116(a)(1). Local Education Agencies[1] ("LEAs") "are given the primary responsibility for overseeing the actual provision of special education services to disabled children." 20 U.S.C. § 1413(a)(1).

If a parent of a child with disabilities believes their child is not receiving a FAPE as requirement by the IDEA, she may request a due process hearing. 20 U.S.C. § 1415(f). An IDEA due process hearing allows a party to present a complaint as to "any matter relating to the identification, evaluation, or educational placement of the child, or

---

[1] An LEA is

> a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for a combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

34 C.F.R. § 300.28.

the provision of a [FAPE]." 20 U.S.C. § 1415(b)(6). In this case, a due process hearing was conducted at the request of Ms. Yazzie, the mother of K.Y. Ms. Yazzie was represented by NADLC, which filed a due process complaint on her behalf, naming both New Mexico School for the Deaf ("NMSD") and GMCS as respondents.

In the administrative proceedings that followed, NADLC and Ms. Yazzie asserted that NMSD had violated the IDEA by preventing K.Y. from continuing as a resident student at NMSD. NADLC and Ms. Yazzie sought future education services for K.Y. to comply with FAPE requirements. Ultimately, GMCS was dismissed from the due process proceedings when the hearing officer determined that NMSD, not GMCS, was responsible for providing FAPE to K.Y. going forward.

GMCS now seeks relief from NADLC and Ms. Yazzie related to litigation expenses incurred in these due process proceedings. GMCS insists that it was named as a respondent without foundation and for an improper purpose and, accordingly, seeks an award against both defendants pursuant to 20 U.S.C. § 1415(i)(3)(B) for fees and costs that resulted from its participation in the administrative proceedings.

## II.    FACTUAL BACKGROUND[2]

Ms. Yazzie's son, K.Y., attended Ft. Defiance Elementary School in Window Rock Unified School District ("WRUSD"), an Arizona school district, from preschool through second grade. *Doc. 67*, Ex. 3, at 25:22-24. In 2010, when K.Y. was in the third grade, he began attending an elementary school outside of his home district and within

---

[2] Both parties – in their statements of fact and responses to opposing party's statements of fact – have at times offered what amount to arguments about the legal significance of facts. For purposes of determining the facts on summary judgment, the Court has disregarded commentary that does not constitute either a material fact or a properly-supported dispute of material fact. *See* Fed. R. Civ. P. 56.

the New Mexico school district of GMCS. *See id*. at 28:4-25; *Doc. 1*, Ex. A ¶ 17. Prior to

the commencement of the 2011-2012 school year, however, K.Y. was disenrolled from

GMCS and enrolled at Tse'Hootsooi Elementary School within his home district at

WRUSD. Pl.'s Resp. to Def.'s Mot. for Summ. J., *Doc. 67* ("Pl.'s Resp."), at Additional

Fact ("AF") ¶¶ g, u. During the 2011-2012 school year, K.Y.'s WRUSD IEP team met

seven times with Ms. Yazzie and a representative of NADLC in attendance. *Id*. at AF ¶ i.

The WRUSD IEP team determined that the Arizona School for the Deaf and Blind was

K.Y.'s least restrictive environment but noted that K.Y.'s parents were not in agreement.

*Id*. K.Y. was enrolled at WRUSD for the first few weeks of the 2012-2013 school year,

but on September 20, 2012, Ms. Yazzie parentally placed him at NMSD in Santa Fe,

New Mexico with the agreement of WRUSD. *Id*. at AF ¶¶ j, p. NMSD is a state-

supported education program/special school in New Mexico. *Id*. at AF ¶ q.

K.Y. attended NMSD beginning in October 2012 until he was banned from its

residential housing in December 2017. *Doc. 1*, Ex. A ¶¶ 2, 21, 27; Def.'s Mot. for Summ.

J., *Doc. 61* ("Def.'s MSJ"), at Undisputed Fact ("UF") ¶ 1. In January 2018, Ms. Yazzie

sought legal advice from NADLC regarding K.Y.'s special education services pursuant

to the IDEA. Def.'s MSJ, at UF ¶ 1. NADLC began receiving some of K.Y.'s educational

records as early as April 3, 2018. *See Doc. 67*, Ex. 7. The records it received, however,

were incomplete. For instance, although K.Y. began attending NMSD in 2012, NMSD

initially provided only K.Y.'s IEP records from 2015, 2016, and 2017. *Id*.; Pl.'s Resp., at

AF ¶¶ h-i. Therese Yanan, NADLC's Executive Director, explained in an affidavit that it

is not unusual for schools to provide incomplete special education records to NADLC.

Def.'s MSJ, at UF ¶ 3.

Notably, the IEP records initially provided to NADLC by NMSD – those from 2015, 2016, and 2017 – identified GMCS as K.Y.'s LEA. *Id*. at UF ¶ 2. But NADLC also had in its possession K.Y.'s records from GMCS, which indicated that K.Y. was transferred out of GMCS in August 2011, more than a year before his enrollment at NMSD, having been characterized as a "[n]o show" there. Pl.'s Resp., at AF ¶ g; *Doc. 67*, Ex. 8. Even so, according to Ms. Yanan, a representative of GMCS attended at least one IEP meeting while K.Y. attended NMSD, and GMCS did not affirmatively object to being named as K.Y.'s LEA. Def.'s MSJ, at UF ¶ 27. NADLC reports that it did not know if GMCS was listed as K.Y.' s LEA because of an arrangement between GMCS and NMSD regarding K.Y. *Id*. at UF ¶ 17.

On June 12, 2018, Alexis DeLaCruz of NADLC filed a "Request for Due Process Hearing Against New Mexico School for the Deaf and Gallup-McKinley County Schools, the Local Educational Agencys [sic]" on behalf of Ms. Yazzie and K.Y. *Doc. 1*, Ex. A; Pl.'s Resp., at AF ¶ a. According to NADLC, the Request was filed to obtain a FAPE for K.Y. Def.'s MSJ, at UF ¶ 4. Ms. Yazzie testified that she filed the Request because she wanted K.Y. to return to school at NMSD, *Doc. 67*, Ex. 3, at 38:18-23–40:9, and because she wanted NMSD to address bullying that K.Y. had experienced and school credits that he had forfeited, *id*. at 37:4–38:5.

NADLC determined that GMCS should be included as a respondent in Ms. Yazzie's due process complaint. Def.'s MSJ, at UF ¶ 6. NADLC explains that it made this determination because GMCS was listed as K.Y.'s LEA in NMSD's 2015, 2016, and 2017 IEPs. *Id*. By naming GMCS as a respondent, NADLC insists that it was attempting to ensure that it had named the party responsible for providing K.Y.' s FAPE going

forward. *Id*. at UF ¶¶ 6, 12. Notably, more than one public agency may have obligations to ensure that a particular child receives services to which he is entitled under the IDEA. *Id*. at UF ¶ 31. NADLC was *not* pursuing a claim that GMCS was responsible for the decision to prevent K.Y. from residing at NMSD. *Id*. at UF ¶ 19. Nor did NADLC name GMCS as a respondent because GMCS previously allowed K.Y. to attend a school within its district while residing outside of its boundaries. *Id*. at UF ¶ 14. Rather, NADLC attorneys knew it was common for students to attend school in districts other those in which they resided. *Id*. at UF ¶ 15. Because the exterior boundaries of the Navajo Nation cross the state lines of Arizona, New Mexico, and Utah and include state-funded public schools as well as federally-funded schools operated by the Bureau of Indian Education, options for students are not always straightforward. *Id*.

In her due process complaint, Ms. Yazzie asserted that "K.Y.'s NMSD IEPs list GMCS as his LEA," though she indicated that GMCS's Special Education Director "did not attend the IEP Meetings." *Doc. 1*, Ex. A ¶ 22. Ms. Yazzie further alleged that "[u]pon information and belief, representatives from GMCS have not been involved in K.Y.'s IEP Meetings because as the ESA [educational service agency], *NMSD is K.Y.'s LEA*." *Id.* ¶ 26 (emphasis added). Ms. Yazzie testified that she believed NMSD's IEP documents incorrectly listed GMCS as K.Y.'s home district. Pl.'s Resp., at AF ¶ l. She testified that she had concerns about including GMCS in the due process complaint because she knew that WRUSD, not GMCS, was K.Y.'s home district. *Id*. at AF ¶¶ k, n. Indeed, at all times prior to and during his education at NMSD, K.Y. was a resident of Sawmill, Arizona. *Id*. at AF ¶ f. Ms. Yazzie testified that she advised NMSD's IEP team that GMCS was not K.Y.'s home school. *Id*. at AF ¶ m.

Ms. Yanan explains that NADLC attorneys feared that if they did not include GMCS as a respondent in K.Y.'s due process complaint, NMSD might assert that GMCS was responsible for providing K.Y.'s FAPE, or a hearing officer might determine that Ms. Yazzie had not named the correct party in her complaint. Def.'s MSJ, at UF ¶¶ 13, 18. According to NADLC's own assessment, it would have been below the standard of care required of an attorney to omit GMCS as a party in Ms. Yazzie's due process complaint. *Id.* at UF ¶ 18. Ms. Yanan also reports that in another case handled by NADLC in the recent past, a hearing-impaired student living outside GMCS's district was placed at NMSD. *Id.* at UF ¶ 16. In that case, Ms. Yanan explains, GMCS took responsibility for services under an agreement with the other district even though the student was not a resident of GMCS. *Id*.

By at least June 28, 2018, while litigation was still underway on Ms. Yazzie's due process complaint, NADLC received a copy of K.Y.'s September 20, 2012[3] IEP from NMSD, K.Y.'s first at that school. Pl.'s Resp., at AF ¶ w. In contrast to later IEPs from NMSD, the September 20, 2012 IEP identified ***WRUSD*** as K.Y.'s LEA. *See Doc. 67*, Ex. 2. It also indicated that WRUSD was "in full agreement to place [K.Y.] at NMSD." *Id*. It did not reference any written agreement between GMCS and NMSD or otherwise suggest that GMCS retained FAPE obligations to K.Y. *See id*.

In NMSD's June 29, 2018 answer to Ms. Yazzie's due process complaint, NMSD asserted that it was not acting as an LEA. Def.'s MSJ, at UF ¶ 20. NMSD noted that

---

[3] Although GMCS's statement of fact refers to K.Y.'s September 20, 201**8** IEP, it is clear from its citation and from the exhibits attached to its response brief that GMCS was referring to K.Y.'s September 20, 201**2** IEP, which NADLC received by at least June 28, 201**8**. *Compare* Pl.'s Resp., at AF ¶ w, with *Doc. 67*, Ex. 5 (June 28, 2018 e-mail to counsel for NADLC and GMCS attaching K.Y.'s September 20, 201**2** IEP from NMSD).

GMCS was listed as K.Y.'s LEA on his NMSD IEPs. *Id*. Shortly thereafter, both NMSD and GMCS filed motions to dismiss Ms. Yazzie's due process complaint. *Id*. at UF ¶ 21. NMSD claimed that the due process hearing officer lacked jurisdiction over the complaint, an argument GMCS joined. *Id*. Relying on *Ellenberg*, NMSD again asserted that it was not K.Y.'s LEA. *Id*. GMCS likewise maintained that it was not K.Y.'s LEA and, therefore, was not responsible for a violation of the IDEA. *Id*. at UF ¶ 22. NADLC responded to GMCS's motion for summary judgment on July 19, 2018, persisting in its claims against the school district and arguing that "GMCS and [NMSD] were both K.Y.'s LEAs." *Doc. 1*, Ex. C, at 2.

Although GMCS insisted that the IEPs identifying it as K.Y.'s LEA were inaccurate, NADLC refused to voluntarily dismiss GMCS from the due process proceedings prior to resolution of the respondents' dispositive motions by the hearing officer. Def.'s MSJ, at UF ¶ 24. This was true even though, by July 6, 2018, NADLC had also received a copy of K.Y.'s 2011-2012 IEP, which confirmed that K.Y. was enrolled at WRUSD, rather than GMCS, prior to being parentally placed at NMSD in 2012. Pl.'s Resp., at AF ¶¶ w, x. According to NADLC, it had lingering concerns that K.Y. could be left without a remedy if GMCS was no longer a party to the administrative proceedings should a hearing officer determine that NMSD was not responsible for K.Y.'s FAPE going forward. Def.'s MSJ, at UF ¶ 24. Ms. Yazzie testified that she was not aware that GMCS asked to be removed from the due process proceedings and that if she had been made aware, she would have approved its dismissal. Pl.'s Resp., at AF ¶ o.

On July 10, 2018, a mediation took place in the underlying due process proceeding. *Id*. at AF ¶ y. GMCS was excused from the mediation because, according

to Ms. Yazzie, the conflict was only between her and NMSD. *Id*. (citing *Doc. 67*, Ex. 3, at 47:18-25).

Four months later, on November 7, 2018, the hearing officer dismissed all claims against GMCS. *Id*. at AF ¶ b.

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable factfinder could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). A mere scintilla of evidence in the non-movant's factor is not sufficient. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, they may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also Medlock v. United Parcel Serv., Inc*., 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (quotation

omitted)). Materials cited to establish the presence or absence of a genuine dispute must be capable of being in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

## IV.   ANALYSIS

In its Petition for Attorneys' Fees and Costs to Prevailing Party, GMCS contends that it is entitled to an award of attorney fees and costs in the amount of $22,868.75 pursuant to 20 U.S.C. § 1415(i)(3)(B) of the IDEA. *Doc. 1* at 1. According to GMCS, the requested fees and costs were "expended by GMCS with *public* monies in the underlying administrative matter before the New Mexico Public Education Department in Due Process Hearing No. 1718-23." *Id*. GMCS explains that it was awarded summary judgment in the underlying due process proceedings because Ms. Yazzie and NADLC lacked foundation for naming it as a party. *Id.*

The pertinent portion of § 1415(i)(3)(B) governing GMCS's present motion provides that a federal district court may award reasonable attorneys' fees as part of the costs:

> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

§ 1415(i)(3)(B)(i)(II)-(III).

With respect to its claims against NADLC, GMCS contends that NADLC named it as a defendant in the underlying due process proceeding *without any foundation*. *Doc. 1* at 2; *see* 20 U.S.C. § 1415(i)(3)(B)(i)(II). With respect to its claims against Ms. Yazzie, in turn, GMCS asserts that Ms. Yazzie named it as a defendant *for an improper purpose*. *Doc. 1* at 2; *see* 20 U.S.C. § 1415(i)(3)(B)(i)(III). NADLC, in contrast, maintains that the undisputed material facts demonstrate that NADLC and Ms. Yazzie had both a proper purpose and foundation for naming GMCS as a respondent in the due process complaint. *Doc. 61* at 2, 8.

To defeat NADLC's motion for summary judgment, GMCS must come forward with evidence, when viewed in a light most favorable to GMCS, from which a reasonable factfinder could conclude by a preponderance of the evidence that:

(1) NADLC filed a due process complaint against GMCS that was frivolous, unreasonable, or without foundation; or

(2) NADLC continued to litigate the due process complaint after the litigation clearly became frivolous, unreasonable, or without foundation; or

(3) Ms. Yazzie's due process complaint, filed on behalf of K.Y., was presented for an improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

*See* 20 U.S.C. § 1415(i)(3)(B)(II) & (III).

### A.    GMCS's Claim Against NADLC Based Upon the Naming of GMCS as a Respondent

In determining whether GMCS is entitled to fees and costs under 20 U.S.C. § 1415(i)(3)(B), the Court must consider, not whether NADLC was successful in its due process claim, but whether Ms. Yazzie's claim against GMCS was so lacking in arguable merit as to be frivolous or unreasonable. *See D.C. v. West*, 699 F. Supp. 2d 273, 278 (D.D.C. 2010). To be deemed frivolous, a complaint must be utterly lacking in legal merit and evidentiary support. *Achievement Preparatory Acad. Pub. Charter Sch.*

*v. Williams*, No. 19-cv-2596, 2020 WL 5038763, at *5 (D.D.C. Aug. 24, 2021). In general, IDEA due process complaints are only considered frivolous when they lack a factual basis or contain inaccurate allegations known to be incorrect at filing. *Id*.

Here, NADLC determined that GMCS should be a named respondent in Ms. Yazzie's due process action on behalf of her son, and it advised Ms. Yazzie of this determination. NADLC maintains that "the undisputed facts establish the reason the Defendants included GMCS" as a respondent – that is, because GMCS was identified by NMSD as K.Y.'s LEA. *Doc. 61* at 9. NADLC emphasizes that, pursuant to the IDEA, the responsibility for providing a FAPE rests with a student's LEA(s) and that more than one agency may have FAPE obligations to a student. NADLC also notes that GMCS did not object to being named as K.Y.'s LEA and even attended an IEP meeting conducted by NMSD.

In an effort to demonstrate the soundness of its decision to name GMCS in the complaint, NADLC submits the affidavit of its executive director, Therese Yanan, in which she outlines NADLC's knowledge of the "troubled history" of FAPE responsibilities in New Mexico and how this contributed to NADLC's decision to name both NMSD *and* GMCS as respondents. NADLC and Ms. Yanan point to *Ellenberg*, which they characterize as a case in which "a State school similar to NMSD, successfully argued that it was not the LEA for purposes of complying with the IDEA." *Doc. 61* at 10 (citing *Ellenberg*, 478 F.3d at 1262). According to NADLC, New Mexico's IDEA history and case law "reflected a continuing uncertainty of the allocation of FAPE responsibilities between LEAs and State Educational Agencies for special needs students being served by a State Educational Agency." *Id.* at 3.

Ms. Yanan also offers observations from NADLC's experience litigating IDEA cases. She reports that LEAs and state educational agencies sometimes assert that the other entity was solely responsible for a student's FAPE obligations, which it suggests led to a concern that NMSD might deny having FAPE responsibilities for K.Y. It is NADLC's position, therefore, that naming GMCS as a respondent safeguarded against the dismissal of Ms. Yazzie's administrative proceeding on the basis that she had not named the LEA identified in K.Y.'s IEPs. In NADLC's words, by naming both NMSD and GMCS, "it was ensuring that both entities with *potential* LEA responsibilities and obligations for K.Y.'s FAPE going forward were named as parties." *Id.* at 11 (emphasis added). NADLC submits that a judicial determination by the hearing officer was required as to what, if any, FAPE obligations GMCS had toward K.Y.

NADLC further asserts that the responsive pleadings filed by NMSD and GMCS in the administrative action confirmed its fears that both educational entities might try to deny FAPE obligations to K.Y. First, NMSD asserted in its answer to the due process complaint that it was not acting as an LEA and that GMCS, instead, was listed as K.Y.'s LEA on his IEPs. GMCS likewise denied any FAPE responsibilities, arguing in its motion to dismiss that it was not K.Y.'s LEA. In its own motion to dismiss, NMSD asserted, pursuant to *Ellenberg*, that it was not an LEA. Given the respective positions of GMCS and NMSD, NADLC maintains that there was no consensus as to which educational entity owed FAPE obligations to K.Y.

NADLC also alleges that it "had one other case in the past several years" in which a hearing-impaired student was placed at NMSD, but when difficulties arose for that student at NMSD, GMCS assumed responsibility for services under an agreement

with another school district. NADLC suggests that in K.Y.'s case it had no way of knowing whether there was an agreement under which GMCS had assumed FAPE responsibilities for K.Y. For all of these reasons, NADLC argues that the undisputed material facts establish that its decision to name GMCS in the underlying due process proceedings was not frivolous, unreasonable, or without foundation. The question before the Court is whether a reasonable factfinder could determine otherwise.

Opposing NADLC's motion for summary judgment, GMCS insists that NADLC acted unreasonably, even recklessly, in naming GMCS as a respondent in the underlying due process proceeding. In GMCS's assessment, NADLC's motion omits facts which bear upon the reasonableness of its initiation of the due process action. Although GMCS acknowledges that it was listed as K.Y.'s LEA on *some* of NMSD's IEPs, it insists that reliance on those designations was unjustified under the circumstances. Indeed, GMCS maintains that the reasons offered by NADLC for naming it as a respondent were pretextual, because NADLC knew or should have known that the IEP records upon which it relied were incomplete and inaccurate.

NADLC concedes that it did not have complete education records from NMSD at the time it filed the subject due process complaint. Yet it maintains that the records in both its possession and in Ms. Yazzie's possession indicated that GMCS was K.Y.'s LEA but failed to provide information as to whether there was an agreement by GMCS to assume FAPE responsibilities. According to NADLC, neither Ms. Yazzie nor NADLC knew why GMCS was listed as K.Y.'s LEA on those IEPs.

Ms. Yazzie explains in her deposition testimony that she believed all along that NMSD's identification of GMCS as K.Y.'s LEA was purely a mistake and that she had

advised the NMSD IEP team of this inaccuracy. GMCS contends that Ms. Yazzie's own due process complaint undermines NADLC's position that GMCS owed *potential* LEA responsibilities to K.Y. when it asserts that GMCS was not involved in K.Y.'s IEP meetings because NMSD was K.Y.'s LEA. *Doc. 67* at 3 (citing *Doc. 1*, Ex. A ¶ 26) (emphasis added). Given this assertion, GMCS maintains that even "NADLC 'believed' that GMCS was *not* K.Y's LEA." *Id.* at 3 (emphasis added).

But even if NADLC was not convinced that GMCS was not K.Y.'s LEA, GMCS insists that it should have been. As GMCS observes, NADLC itself was involved with K.Y.'s education even before Ms. Yazzie enrolled K.Y. at NMSD. In fact, during the 2011-2012 school year, after K.Y.'s disenrollment from GMCS but before he was enrolled at NMSD, K.Y.'s IEP team at WRUSD held seven IEP meetings, which both Ms. Yazzie and a representative of NADLC attended. As such, GMCS submits that NADLC should have known that there was no basis for asserting that GMCS owed possible LEA responsibilities to K.Y.

GMCS also asserts that NADLC failed to adequately analyze or investigate how K.Y. came to be enrolled at NMSD before initiating a due process proceeding against GMCS. It maintains that NADLC **should have known**, from reviewing K.Y.'s school records, from participating in IEP meetings, and from interviewing Ms. Yazzie: (1) that K.Y was a resident of Arizona rather than New Mexico for all years prior to and during his attendance at NMSD; (2) that WRUSD was K.Y.'s "home district" during all relevant times; (3) that K.Y. was disenrolled from GMCS for more than a year before he was enrolled at NMSD; (4) that K.Y. was enrolled at WRUSD between his disenrollment at GMCS and his enrollment at NMSD; (5) that GMCS's IEP Team did not refer K.Y. to

NMSD for special education services; (6) that, instead, K.Y. was parentally placed at NMSD through a transfer from WRUSD with WRUSD's approval; and (7) that K.Y.'s first IEP at NMSD, on September 20, 2012, identifies WRUSD as K.Y.'s LEA, states that WRUSD agrees to K.Y.'s placement at NMSD, and fails to reference any written agreement between GMCS and NMSD that would suggest GMCS retained any FAPE obligations to K.Y. In sum, GMCS contends that "there are genuine issues of material fact and application of law as to what pre-filing information the Defendants knew or reasonably should have known with the exercise of competence and due diligence." *Doc. 67* at 6. The Court agrees.

Most critically, K.Y.'s residence in Arizona, his parental placement at NMSD, and the absence of any written agreement requiring GMCS to provide educational services to K.Y. seemingly undermine NADLC's assertion that GMCS *potentially* owed FAPE responsibilities to K.Y. Indeed, genuine disputes exists as to whether competent representation and diligence by NADLC would have revealed these facts *and their significance to Ms. Yazzie's due process claims*.

NADLC is steadfast in its assertion that there was a possibility that the administrative hearing officer might determine that GMCS owed FAPE obligations or that he might dismiss Ms. Yazzie's action for failure to name GMCS as a respondent. Nevertheless, the Court agrees with GMCS that a reasonable factfinder could be persuaded that Ms. Yazzie's due process claims against GMCS lacked arguable merit and that naming GMCS as a respondent under the circumstances was unreasonable and frivolous.

In response to NADLC's contention that GMCS was named to avoid wholesale dismissal of Ms. Yazzie's due process action, GMCS presents facts and arguments supporting the notion that no matter how K.Y. came to be enrolled at NMSD, NMSD still owed FAPE obligations to K.Y. To this end, GMCS points to the expert opinion of Attorney Tony Ortiz. Mr. Ortiz discusses the 2018 version of § 6.31.2.11(J)[4] of the New Mexico Administrative Code ("NMAC") and opines that the NMAC imposed a non-delegable FAPE obligation on NMSD as a result of NMSD's acceptance of K.Y. as a student. *See Doc. 67* at 4 (citing *Doc. 64*, at ¶¶ 1-17). GMCS argues that there was no *reasonable* concern that Ms. Yazzie's due process action would be dismissed on account of her failure to name GMCS, where she named a separate school with a clear, non-delegable FAPE obligation to K.Y.: NMSD. Mr. Ortiz opines that the relevant New Mexico regulations "unequivocally did not excuse a state supported educational agency (or Special School) from FAPE obligations." *Doc. 64* ¶ 14.

It is significant that Ms. Yazzie's due process complaint seeks relief from NMSD, not from GMCS. As to any other unidentified school districts or educational entities which might share a responsibility to provide K.Y. with FAPE, GMCS suggests that NADLC should have named a John Doe respondent as a place holder rather than name GMCS, which it should have known had no involvement with K.Y.'s education since 2011. As GMCS puts it, "claimed fear" of dismissal of the due process action did not justify NADLC's "reckless 'sue now and ask questions later' approach." *Doc. 67* at 4.

---

[4] As NADLC points out in its reply brief, the regulation to which Mr. Ortiz refers, and the language of which he cites, is NMAC § 6.31.2.11(J), though he identifies the regulation as NMAC § 6.31.2.12 (J). *See Doc. 71* at 5.

Ultimately, *viewing the evidence in the light most favorable to GMCS,* as it must, the Court is satisfied that a rational trier of fact could determine that naming GMCS in the due process complaint met the standard for unreasonableness required for an award of fees and costs against an attorney under 20 U.S.C. § 1415(i)(3)(B). While it is undisputed that NMSD listed GMCS as K.Y.'s LEA in *some* of his IEPs, evidence presented by GMCS could support a finding that NADLC should have known that these LEA designations were inaccurate and without effect. Specifically, GMCS has come forth with evidence that both NADLC and Ms. Yazzie should have been aware of K.Y.'s educational history, including his residence and how he came to be enrolled at NMSD. GMCS has also presented evidence and argument that could support a finding that it was unreasonable to name GMCS as a respondent out of concern that Ms. Yazzie's action might otherwise be dismissed. Simply put, at this stage, NADLC's motion fails to demonstrate entitlement to judgment as a matter of law as to this claim.

### B.   GMCS's Claim Against NADLC Based Upon its Refusal to Voluntarily Dismiss GMCS from the Due Process Action

Even if the Court were not persuaded that GMCS raised an issue of material fact as to whether NADLC unreasonably named GMCS as a respondent in the due process complaint, the Court has little difficulty finding that GMCS has presented evidence from which a reasonable trier of fact could determine that litigation against GMCS became frivolous after June 28, 2018. Specifically, GMCS notes that by June 28, 2018, NADLC had received a copy of K.Y.'s September 20, 2012 IEP. That IEP explains that Ms. Yazzie placed K.Y. at NMSD with the approval of WRUSD. GMCS recites the language of the IEP:

> [K.Y.]'s parents would like to place their son at NMSD and receive services as there are no services and resources at their home school district in Window Rock . . . . NMSD is proposing that NMSD accept [K.Y.]'s current IEP from his Window Rock School District . . . . NMSD and Window Rock School district will continue to collaborate together to provide services for [K.Y.].

*Doc. 67* at 6 (quoting *Doc. 67*, Ex. 2). While this IEP language suggests that NMSD and WRUSD may share FAPE responsibilities, it could be construed as confirming that GMCS was not involved in K.Y.'s placement at NMSD and that it had not agreed to provide educational services to K.Y. at NMSD. It also constitutes evidence from which a reasonable factfinder could determine that persisting in due process claims against GMCS became frivolous or unreasonable.

For its part, NADLC maintains that its refusal to voluntarily dismiss GMCS was reasonable, as it was necessary to continue the litigation against GMCS until a hearing officer determined which school district or educational institution – GMCS or NMSD – was responsible for providing FAPE to K.Y. But in the Court's view this approach could be deemed unreasonable, where the facts available to NADLC as of June 28, 2018, failed to support due process claims against GMCS. The Court will deny NADLC's motion as to this claim as well.

### C.   GMCS's Claim Against Ms. Yazzie

Pursuant to 20 U.S.C. § 1415(i)(3)(B)(III), the circumstances under which attorney fees may be levied against a parent are more limited. That is, in order to justify an award against Ms. Yazzie, GMCS must establish that her due process complaint "was presented for an[] improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *See* 20 U.S.C. § 1415(i)(3)(B)(III).

Here, NADLC denies that the underlying due process proceedings were initiated against GMCS to harass, cause delay, or to needlessly increase the costs of litigation. Instead, it maintains that GMCS was included as a party to the due process action because NADLC considered it necessary "to protect the IDEA rights of Ms. Yazzie and K.Y. and to further the purpose of IDEA to ensure that FAPE is provided to every special-needs student." *Doc. 61* at 12. NADLC also insists that its briefing at the administrative level was "not repetitive and did not include dilatory filings or generally contumacious litigation conduct." *Id.* at 15. It points out that when the hearing officer determined that GMCS was not K.Y.'s LEA, both NADLC and Ms. Yazzie accepted that ruling and did not appeal.

While there is a genuine dispute of material fact as to whether it was unreasonable for NADLC to initiate and maintain a due process claim against GMCS, the Court agrees that GMCS fails to point to any evidence that would support a conclusion that GMCS was named for some nefarious purpose. According to Ms. Yazzie, her aim in filing the due process complaint was to have K.Y. returned to school at NMSD and to address bullying and forfeited school credits at NMSD. NADLC, in turn, explains that it was attempting to name each party with potential FAPE responsibilities and to avoid dismissal of the due process action for failure to name the entity listed as K.Y.'s LEA. Even if these justifications were unreasonable, the Court is satisfied that they are not indicative of an improper purpose that might warrant an award of fees against Ms. Yazzie under § 1415(i)(3)(B)(III).

Further, evidence presented *by GMCS* in opposition to NADLC's summary judgment motion suggests that Ms. Yazzie was not culpable in maintaining a due

process claim against GMCS. To the contrary, the record suggests that Ms. Yazzie was merely acting on the advice of counsel as to the proper and necessary parties in the due process action, despite her own reservations about naming GMCS as a respondent. For example, GMCS presents evidence that Ms. Yazzie had concerns about including GMCS in the due process complaint because she knew that WRUSD was K.Y.'s home district and that GMCS had not been involved with K.Y.'s education since he was disenrolled from GMCS in 2011. GMCS also emphasizes Ms. Yazzie's testimony that she advised NMSD's IEP team that GMCS was not K.Y.'s home school. Finally, GMCS presents evidence that Ms. Yazzie testified that she was not aware that GMCS asked to be removed from the due process proceedings and that if she had been made aware, she would have approved its dismissal.

GMCS has not identified any witness testimony or document to support a finding that Ms. Yazzie sought to name GMCS for an improper purpose. Nor has GMCS given examples of unwarranted delay or prolonged litigation for which Ms. Yazzie is responsible. Instead, the evidence before the Court suggests that Ms. Yazzie would have voluntarily dismissed GMCS from the litigation, as she did not seek any IDEA relief from it. Under these circumstances, the Court determines that it would be improper to award fees against Ms. Yazzie pursuant to 20 U.S.C. § 1415(i)(3)(B)(III). As such, the Court concludes that Ms. Yazzie is entitled to judgment as a matter of law, and it grants summary judgment in favor of Ms. Yazzie on GMCS's claim against her.

## V.    CONCLUSION

For all of the reasons above, the Court finds that NADLC's summary judgment in favor of Ms. Yazzie is warranted but not in favor of NADLC.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment

(*Doc. 61*), is granted in part and denied in part. Summary judgment is hereby granted in

favor of Defendant Mavis Yazzie, and GMCS's claims against her are dismissed with

prejudice. In all other respects, the Motion is denied.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent